CARROLL, DONALD K., Chief Judge.
The plaintiff in a suit for declaratory decree has appealed from a final decree entered by the Circuit Court for Leon County declaring that certain sales contracts for deed are subject to the state documentary tax.
The plaintiff corporation is engaged in the' business of developing and selling building lots on a large scale at moderate prices in an area known as Cape Coral in Florida. Most of the lots are sold under long-term payment plans.
The marketing plan adopted by the plaintiff contemplates the execution of three documents. The first is an “agreement for contract” executed by the plaintiff’s salesman negotiating the sale, which agreement recites the initial payment, the price of the lots to be purchased, the amount of monthly payments, and a tentative selection of the lots to be purchased. While not specified therein, the contract contemplates that the *397 plaintiff, during the payment period, will make certain improvements designed to make the lots suitable for the erection and occupancy of small houses. Included in the agreement is a six months money-back guarantee providing that, if the purchaser is not “completely delighted” with the property after an inspection within six months, all the money he has paid will be refunded.
The second document, which is executed by the purchaser and executed and acknowledged by the plaintiff, is a contract describing the lots to be purchased and the terms of the monthly payments. This contract .also embodies the inspection refund privilege mentioned above and a provision for the purchaser’s right to exchange his lots for •other lots of equal value before final payment, or within one year if it is a cash purchase. The contract provides for a prepayment of the purchase price at the purchaser's option. If the purchaser defaults in any deferred payment after a 60-day grace period, he will, at the plaintiff’s option, forfeit all right and interest in the property, and all payments theretofore made will be retained by the plaintiff as liquidated ■damages for its having withdrawn the property from the market. The contract assures the purchaser that he will receive a warranty deed when he has fully paid for his lots, if he had not accelerated any payment.
The third document executed under the plaintiff’s marketing plan is the warranty •deed, which is delivered to the purchaser, ■covering the lots purchased.
The question before the Circuit Court and this court is whether the contract (the second document described above) comes within the provisions of Section 201.08, Florida 'Statutes, F.S.A., so that it must bear a documentary tax stamp.
Section 201.08(1) provides as follows:
“(1) On promissory notes, nonrne-gotiable notes, written obligations to pay money, assignment of salaries, wages, or other compensation, made, executed, delivered, sold, transferred, or assigned in the state, and for each renewal of the same on each one hundred dollars of the indebtedness or obligation evidenced thereby, the tax shall be ten cents on each one hundred dollars or fraction thereof. Mortgages which incorporate the certificate of indebtedness, not otherwise shown in separate instruments, are subject to the same tax at the same rate,”
The Circuit Court held that such contracts are taxable under the above statute when they become six months of age without being rescinded, but that no tax may properly be collected on the contract for the first six months, because during that period the promise is contingent upon the purchaser’s right to rescind the purchase following an inspection.
The precise question before us, then, is whether the said contracts constitute “written obligations to pay money” within the meaning of those words in the above-quoted statute.
In support of its contention that the contracts are not subject to the documentary tax, the plaintiff-appellant strongly relies upon the opinion of the Supreme Court of Florida in Metropolis Publishing Co. v. Lee, 126 Fla. 107, 170 So. 442 (1936), involving a contract to purchase advertising. In that case the Supreme Court said that the statute “was intended to apply to bonds, debentures, certificates of stock, sales of stock, agreements to sell stock, promissory notes, whether negotiable or not, assignments of salary, wages, or other compensation, and deeds and mortgages of any kind.” With reference to the contract to purchase advertising involved in that case, the Supreme Court said:
“The agreement brought in question does not come within any of the foregoing documents or instruments. It amounts to nothing more than an execu-tory agreement to purchase advertising space, the amount of which is uncertain, *398 and no obligation to pay arises until the advertising is run. * * * ”
The appellant also relies upon the recent case of State ex rel. Weinberg v. Green, Sup., 132 So.2d 761 (1961), which involved a series of executory agreements leading to the eventual purchase of subdivision lots. In that case the Supreme Court said that in the Metropolis case “this court committed itself to the doctrine that, absent any language to show that such statutes were intended to be all-inclusive, they would be construed ejusdem generis, that is, referring to things of the same genus or class.” Specifically with reference to the instruments before it, the Supreme Court said:
“Viewed in the large, the agreement for deed contains little more than a list of details for executing the purchase and sales agreement. These details are ex-ecutory; they do not form the basis of an obligation to pay money within the meaning and intent of § 201.08, Florida Statutes, F.S.A., and, therefore, cannot be said to be in the same class as promissory notes, non-negotiable notes and other written obligations to pay money. Consequently, there is no theory presented, whereby the documentary stamp tax.can now be imposed on the agreement for deed.”
In the final decree' appealed from herein the Circuit’ Court distinguishes the Metropolis case by pointing out that the Supreme Court therein declared that the contract for advertising “amounts to nothiilg more than an- executory agreement to purchase advertising space, the amount of which is uncertain, and no obligation to pay arises until the advertising is run.”
The Circuit Court in the final decree also distinguishes the Weinberg case by quoting the Supreme Court’s statement therein that the agreement for deed could not be an obligation to pay money because of a provision in the agreement that no personal obligation was to be imposed against the purchaser or a buyer from him, but that the seller “will look only to the land itself for payment of the balance of the purchase price.”
The Circuit Court further said that the contract before us is the exact opposite of that in the Weinberg case, because of the provision in the present contract that it “constitutes the entire agreement between the parties hereto and shall inure to the benefit of, and be binding upon, their heirs, personal representatives, successors and assigns.”
We think that the Circuit Court has correctly distinguished the Metropolis and Weinberg decisions. We also agree with the Circuit Court’s holding that the two mentioned Supreme Court decisions “do not support the plaintiff’s position, but inferentially lead to a different conclusion.”
We recognize that Section 201.08, Florida Statutes, F.S.A., is a taxing statute with a penal provision, and that the well-established rule is that such statutes should be construed strictly and all doubts or ambiguities resolved in favor of the taxpayer.
The contracts before us on this appeal appear to come squarely within the rationale and definition set forth in Dundee Corporation v. Lee, 156 Fla. 699, 24 So.2d 234 (1946), which involved the taxability of a 99-year lease to pay rent. In that case the Supreme Court of Florida said:
“We think the phrase 'written obligations to pay money’ must comprehend the covenant in a lease to pay rent. The purpose of the act was to raise revenue and ‘written obligations to pay money’ was intended as a dragnet to catch any kind of an instrument designed for that purpose. The universal administrative interpretation of ‘written obligations to pay money’ has been to enlarge the classification immediately preceding it, rather than to apply the rule of ejusdem generis to it as contended by appellants. The environment in which the phrase is used supports this interpretation. Cer *399 tainly a ninety-nine year lease must convey some kind of an ‘interest’ in land.”
The contract before us definitely fixes a debt and the purchase price of the lot, and embodies the purchaser’s promise to pay this debt, which obligation is made expressly binding upon the purchaser’s heirs, personal representatives, successors, and assigns, as well as upon the purchaser himself. The holder of this contract could doubtless recover a judgment by pleading and proving the contract and its breach. However, as the Circuit Court held, the said contract does not become a binding obligation of the purchaser to pay until six months after the contract’s execution during which period he has the right to change his mind.
It is our opinion that such contracts, after the six months have elapsed, constitute “written obligations to pay money” even under a strict construction of Section 201.-08, Florida Statutes, F.S.A., and are subject to the Florida documentary tax, as the Circuit Court held in the final decree appealed from.
Affirmed.
STURGIS and RAWLS, JJ., concur.'