WARREN, LAMAR, Circuit Judge.
This is an original proceeding in mandamus seeking the refund of intangible personal property taxes paid under protest on a number of agreements for deed entered into by and between the relator and numerous purchasers.
On its tangible personal property tax return for 1963, relator returned the agreements for deed as class D intangible personal property, which it said was error on its part. Subsequently, a county tax notice-receipt for taxes due on intangible personal property was received, the largest part of which constituted a class D intangible tax on the agreements; thereafter, relator paid a sum representing taxes and interest, which included payment of the class D intangible tax and interest. The payment was made under protest, the relator claiming that the said contracts constituted class C intangible personal property, and the same not having been presented for recordation, nor any effort having been made to secure performance thereof, no intangible tax, class C or otherwise, was due. Relator applied under the applicable law for refund, but the application was refused.
The point to be resolved is whether or not the relator must pay any intangible personal property taxes on an agreement for deed which has not been presented for recordation and when no effort has been made to enforce the terms of the instrument.
Article IX, Section 1, of the Constitution, F.S.A., provides as follows : “The Legislature shall provide for a uniform and equal rate of taxation, except that it may provide for a special rate or rates on intangible property, but such special rate or rates shall not exceed two mills on the dollar of the assessed valuation of such intangible property; provided, that as to any obligations secured by mortgage, deed of trust, or other lien, the Legislature may prescribe an intangible tax of not more than two (2) mills on the dollar, which shall be payable at the time such mortgage, deed of trust, or other lien is presented for recordation, said tax to be in lieu of all other intangible assessments on such obligations. The special rate or rates, or the taxes collected therefrom, may be apportioned by the Legislature, and shall be exclusive of all other State, County, District and municipal taxes; and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes.”
It is manifest that if the subject instruments constitute “obligations secured by mortgage, deed of trust, or other lien,” they are subject only to an intangible personal property tax of two mills on the dollar, which shall be payable only when the *783 instrument creating the obligation is presented for recordation.
The Legislature in implementing the above constitutional authority, created four classes of intangible personal property. Class C was defined in F.S. § 199.02(3), F. S.A., “as being all notes, bonds and other obligations bearing date subsequent to December 31, 1941, for payment of money which are secured by mortgage, deed of trust or other liens upon real property situated in Florida; * *
Section 199.11(3) fixed the amount to be annually levied and assessed on class C, to-wit: “On all class C intangible personal property two mills on the dollar of the taxable value of such class C intangible personal property, which taxable value shall be the principal amount of the indebtedness, evidenced by such obligation, which tax shall he due and payable when mortgage, deed of trust or other lien is executed and shall be paid to the county tax collector before the mortgage, deed of trust or other lien securing such indebtedness is presented for recordation. * * * ”
From a comparison of Article IX, Section 1 of the Constitution with § 199.11(3), it is observed that the former provides for payment of the tax when the lien is presented for recordation, while the latter provides for payment when the lien is executed. In the early case of State ex rel. West v. Butler, 70 Fla. 102, 69 So. 771, this court recognized clearly the limitations of the Legislature in enacting acts conflicting with the Constitution, when it stated at page 777: “While the lawmaking power of the Legislature is limited only by the express and clearly implied provisions of the federal and state Constitutions, and while all fair intendments should be indulged in favor of the constitutionality of a duly enacted statute, yet the provisions expressed and implied of the Constitution are superior to legislative enactments, and the Constitution must prevail where a statute conflicts therewith; and where the terms of a statute plainly conflict with an applicable provision of the Constitution, it is the duty of the court in proceedings where the matter is appropriately presented to ‘support, protect and defend the Constitution,’ by giving effect to its provisions, even if in doing so the statute is held to be inoperative [citations]. Express or implied provisions of the Constitution cannot be altered, contracted or enlarged by legislative enactments. A legislative construction of an ambiguous or uncertain provision of organic law may be persuasive; but constitutional provisions that are clear and explicit in terms or made so by the history of their adoption and by long-continued application and recognition in governmental proceedings cannot be given by legislation a meaning that conflicts with the terms of such clear and explicit provisions.” 6 Fla.Jur. Constitutional Law § 38.
Thus, when the above cited rule is applied herein, we find that the provisions of the Constitution must control over the conflicting language found in the statute. The language appearing as a part of the organic law is clear and explicit; it requires the tax to be paid at the time the instrument is presented for recordation, and the statutory language rendering the tax due and payable when the instrument is executed must give way. The Constitution is a limitation on power as distinguished from a grant of power, particularly with regard to legislative power. 6 Fla.Jur. Constitutional Law § 37.
Having established that the class C intangible property tax is payable at the time the instrument involved is presented for recordation, it next becomes necessary to determine whether or not contracts for deed are class C intangible personal property.
The court in Jasper v. Orange Lake Homes, Inc., Fla.App., 151 So.2d 331, in affirming the finding of the lower court that agreements for deed held by the seller were taxable only as class C intangible per *784 sonal property, as defined in F.S. § 199.02 (3), F.S.A., concluded that such agreements, providing for conveyance of realty upon payment of the purchase price and for termination of the agreement and forfeiture in the event of default, constituted obligations for payment of money secured by lien on realty, taxable only once as class C intangible personal property, although alternative remedies were available to the vendor in the event of breach of the contract by the purchaser, the court remarking, at page 333, “At any rate, the Constitution limits the levy of the tax on any obligation secured by mortgage, deed of trust or other lien to the one-time tax (Class ‘C’), and in lieu of all others. The statutory language cannot be used to broaden the constitutional limitation. The vendor’s liens arise by virtue of the agreements for deed. They are neither implied vendor’s liens which may arise after conveyance of the title (as in McKinnon v. Johnson, 1907, 54 Fla. 538, 45 So. 451), nor expressly reserved vendor’s liens (as in Wilson v. Davis, 1920, 80 Fla. 727, 86 So. 686). But, none the less, the agreements for deed are, in legal effect, vendor’s liens, by virtue of which the vendor holds the naked legal title as security for the payment of the purchase price. The fact that the vendor, upon the breach by the vendee of his contract to purchase, has alternative remedies available to him does not alter the basic position of the vendor; viz., the holder of a vendor’s lien. The lien is the result of the agreement between the vendor and the vendee, and it is not a vendor’s lien after absolute conveyance; therefore, the determination made in McKeown v. Collins, 1896, 38 Fla. 276, 21 So. 103, to the effect that a vendor’s lien after absolute conveyance is not a specific absolute charge upon the property is not controlling, and that decision is not determinative of the question here.”
In State ex rel. Henry G. Du Pree Co. v. Gay, Fla., 46 So.2d 165, the court heretofore recognized that a class C intangible personal property tax is payable when presented for recordation, the court, at page 168, noting that; “It is a matter of common knowledge, of which this court can take judicial notice, that the Class C tax is exacted by our tax gatherers only at the time the mortgage, or other security, is presented for recordation, or for enforcement in our courts; and that, once this tax has been collected on a particular secured obligation, no further annual tax is collected by the tax collectors of this state on such obligation. * * * It may be seen, therefore, that in its practical operation, the Class C tax is exacted only if the owner of the secured obligation elects to record his security or to enforce it in our courts.”
The respondent contends that it was not the purpose and intention of the Legislature, when it submitted to the electors the 1944 amendment (the proviso) to Article IX, Section 1, supra, or of the people of the state when they adopted the same, to relieve the instruments mentioned therein from taxation through the means of not recording them, but intended only to give to a taxpayer an election to pay a single tax, instead of paying a series of annual taxes. A full consideration of Section 1 and its background does not support this position, nor does this holding discriminate between a person who does not record his lien and one who chooses to do so.
A peremptory writ is therefore granted and the respondent is directed to draw his warrant for the return of the amount paid for class D intangible tax and interest.
THORNAL, C. J., and O’CONNELL and CALDWELL, JJ., concur.
ERVIN, J., dissents with opinion.